IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NIZAR TRABELSI, ) | |
| ) | |
| Petitioner-Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:24-cv-1509 (RDA/LRV) |
| ) | |
| JEFFREY CRAWFORD, *et al.*, ) | |
| ) | |
| Respondents-Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Petitioner Nizar Trabelsi's Petition for Writ of *Habeas Corpus* (Dkt. 1) and the Federal Respondents-Defendants' Response and Motion to Dismiss (Dkt. 33) ("Motion").[1] This matter is fully briefed and ripe for disposition. Oral argument was held on October 23, 2024. Considering the Petition and the Motion together with Petitioner's Reply (Dkt. 35) and the argument heard on October 23, 2024,[2] the Court GRANTS the Federal Respondents-Defendants' Motion.[3]

---

[1] The Federal Respondents-Defendants include: (i) the Director of U.S. Immigration and Custom Enforcement's Washington Field Office, Liana Castano; (ii) Secretary of Homeland Security Alejandro Mayorkas; and (iii) Attorney General Merrick B. Garland.

[2] Consistent with the parties' positions and this Court's prior orders, the argument and briefs focused on the habeas counts in the Petition (Counts 1 through 4). Similarly, the Court only addresses Counts 1 through 4.

[3] Although the Court grants the Motion and will dismiss the four habeas-based counts, the Court notes that this case presents an unusual, facially incongruent, situation where the United States is seeking to deport a noncitizen who wishes to be removed. The issue that keeps Petitioner in the United States is a dispute over to where Petitioner should be removed. The United States apparently has an interest – which its counsel was unable to articulate at the oral argument in this matter – in removing Petitioner to Tunisia (his country of origin) and refuses to permit Petitioner to be removed to Belgium where Petitioner desires to go, where an immigration judge has deemed it appropriate to send him, and where Belgian courts have given at least some indication of a

## I.  BACKGROUND

Petitioner Nizar Trabelsi was born in Tunisia. Dkt. 1 ¶ 25. He then lived in Germany before moving to Belgium in July 2001, where his wife and stepchildren are Belgian citizens. *Id.* ¶ 27.

After the September 11, 2001 attacks on the United States, Petitioner was arrested by Belgian law enforcement. *Id.* ¶ 28. Following his arrest, Petitioner was charged with "conspiracy, destruction by explosion, possession of weapons of war, and belonging to a private militia." *United States v. Trabelsi*, 845 F.3d 1181, 1184 (D.C. Cir. 2017).[4] Belgian courts convicted Petitioner, and, on September 30, 2003, he was sentenced to ten years in prison for "having attempted to destroy the military base of Kleine-Brogel with explosives, having committed forgery, and having been the instigator of a criminal association formed for the purpose of attacking people and property." *Id.*; Dkt. 1 ¶ 29.

In 2005, as Petitioner was serving his Belgian criminal sentence, a Tunisian military court issued an arrest warrant for Petitioner after convicting and sentencing him *in absentia* to two consecutive ten-year terms of imprisonment for belonging to a terrorist organization abroad in peacetime. Dkt. 1 ¶ 30.

One year later, in 2006, a federal grand jury in the District of Columbia indicted Petitioner on terrorism-related criminal charges. Dkt. 1 ¶ 31; *United States v. Trabelsi*, 1:06-cr-89-RDM, Dkt. 3 (D.D.C. April 7, 2006). As part of that criminal case, the United States requested that

---

willingness to accept him. This gives rise to a very strange set of circumstances and, in this Court's view, has led Petitioner to institute proceedings in this District in order to push the government to remove the obstacle it has presented to Petitioner's return to Belgium.

[4] There are multiple opinions arising from Petitioner's criminal case in the United States District Court for the District of Columbia.

Belgium extradite Petitioner to face criminal charges in the United States. *Id.* ¶ 32; *Trabelsi*, 845 F.3d at 1184. Belgian courts approved the extradition, but Petitioner challenged that extradition. *Id.* ¶¶ 33-34. As part of Petitioner's extradition, the U.S. Embassy in Belgium provided a diplomatic note dated August 10, 2010. Dkt. 1-1 (the "2010 Note"). The 2010 Note set forth the charges against Petitioner, the penalties associated with those charges, and stated that, if Petitioner was "extradited to the United States, the United States w[ould] not extradite him to a Third State for an offense committed prior to his surrender without the consent of the Government of Belgium." *Id.*

In November 2011, Belgium formally approved Petitioner's extradition to the United States. Dkt. 1 ¶ 36. In 2011, Petitioner sought and obtained a stay of extradition from the European Court of Human Rights ("ECHR"). *Id.* ¶ 38. After the completion of his Belgian sentence, however, Petitioner was extradited to the United States. *Id.* ¶ 40. On October 3, 2013, Petitioner was paroled into the United States in order to face criminal charges and he was arraigned the same day. *Id.* ¶ 42; *Trabelsi*, 845 F.3d at 1185.

On September 15, 2014, Petitioner moved to dismiss the indictment for violating the Extradition Treaty. *Trabelsi*, 845 F.3d at 1185. The District Court denied the motion in an opinion and order. *Id.* Petitioner then appealed the denial of his motion to the D.C. Circuit Court of Appeals. *Id.* In 2017, the D.C. Circuit determined that "Trabelsi's extradition comports with Article 5 of the Treaty." *Id.* at 1191.

Following the issuance of the D.C. Circuit's opinion, there were developments in Belgium regarding Petitioner's extradition, which led Petitioner to seek reconsideration of his motion to dismiss and he again appealed the denial of his motion to the D.C. Circuit. *United States v. Trabelsi*, 28 F. 4th 1291 (D.C. Cir. 2022). As the D.C. Circuit opinion recounts, there were

disputes between the Belgian executive and the Belgian judiciary about the propriety of Petitioner's extradition, but, ultimately, the Brussels Court of Appeals denied Petitioner's request to order the Belgian state to transmit a diplomatic note to the United States expressing an opinion that the Extradition Order did not conform to Article 5 of the Treaty. *Id.* at 1297. The D.C. Circuit again affirmed the District Court and held that "this Court should defer to the Belgian state's Extradition Order and its explanations of its subsequent diplomatic notes, rather than to the Belgian courts' interpretation." *Id.* at 1300.

On December 13, 2022, the Belgian government issued a second diplomatic note to the United States. Dkt. 1 ¶ 46; Dkt. 1-2 (the "2022 Note"). The 2022 Note recounted the Brussels Court of Appeals Order and noted that it was transmitting the 2022 Note "in fulfillment of the order" from the Brussels Court of Appeals requiring that the Belgian government request the return of Petitioner. Dkt. 1-2.

From June to July 2023, Petitioner was tried before a federal jury in the U.S. District Court for the District of Columbia. On July 14, 2023, the jury found Petitioner not guilty. Dkt. 1 ¶ 48; *United States v. Trabelsi*, 1:06-cr-89-RDM, Dkt. 651 (D.D.C. July 14, 2023).

On July 17, 2023, Petitioner was transferred to Immigration and Customs Enforcement ("ICE") custody at the Farmville Detention Center ("FDC"). Dkt. 1 ¶ 48. On July 19, 2023, ICE filed a Notice to Appear ("NTA") commencing removal proceedings against him. *Id.* ¶ 49. Petitioner was charged as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an "arriving alien" who lacked valid entry documents. Dkt. 33-2.[5] The NTA further states: "You arrived in the United States and applied for admission on or about October 2, 2013, at Manassas Regional Airport." *Id.*

---

[5] The NTA and other documents related to the removal proceedings are incorporated by reference into the Petition, even though they were not attached.

Also, on July 19, 2023, ICE issued a Notice of Custody Determination, which informed Petitioner that he would be detained pending a final administrative determination in his removal proceedings. Dkt. 1 ¶ 50; Dkt. 33-3. Petitioner acknowledged receipt of the custody and requested that an immigration judge ("IJ") review his custody determination. *Id.*

On September 6, 2023, Petitioner appeared in his removal proceedings. Dkt. 33-4. Petitioner then "admitted to the allegations in the NTA and conceded the then-sole charge of inadmissibility." *Id.* at 5. Petitioner also declined to designate a country of removal; therefore, the IJ directed that Tunisia be the country of removal. *Id.*

On September 22, 2023, Petitioner filed written pleadings designating Belgium as the country to which he wanted to be removed. Dkt. 1 ¶ 51.

On October 19, 2023, Petitioner filed a Form I-589, Application for Asylum and Withholding of Removal, seeking deferral of removal to Tunisia under the Convention Against Torture ("CAT") based on his alleged fear of torture by the Tunisian government. *Id.* ¶ 52. Over the government's objection, the IJ designated Belgium as the primary country of removal with Tunisia listed as the only alternative country. Dkt. 33-4 at 6.

On November 28, 2023, the government filed Form I-261, Additional Charges of Admissibility/Deportability, which included 29 additional factual allegations and seven additional charges of inadmissibility. Dkt. 1 ¶ 54; Dkt. 33-4 at 6. On December 11, 2023, Petitioner "conceded two of the additional charges of inadmissibility" as a noncitizen "convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of a crime involving moral turpitude." Dkt. 33-4 at 7.

On July 15, 2024, the Belgian government sent another diplomatic note to the U.S. Embassy. Dkt. 1 ¶ 56; Dkt. 1-3 (the "2024 Note"). In this 2024 Note, the Belgian government

5

stated that the Belgian judiciary had again directed the Belgian government to address a request to the United States for the return of Petitioner to Belgium and requested that the United States "initiate negotiations with a view to a possible return." Dkt. 1-3. The 2024 Note further states: "Please note that an appeal procedure against the orders is still ongoing." *Id.*

On August 30, 2024, the IJ issued her ruling. Dkt. 33-4. The ruling provides that Petitioner is removable and that he should be removed from the United States to Belgium, or alternatively to Tunisia, and granted his request for deferral of removal to Tunisia under the CAT. *Id.* at 58. The government subsequently appealed the IJ's grant of CAT relief to the Board of Immigration Appeals on September 24, 2024. Dkt. 33-5. Petitioner did not cross-appeal and the appeal remains pending.

On August 28, 2024, Petitioner filed his combined Petition for Writ of *Habeas Corpus* and Civil Complaint, challenging both the fact of his immigration detention and his conditions of confinement. Dkt. 1. He raises four *habeas* counts (Counts 1-4).

On September 25, 2024, Petitioner filed his Motion for Order to Show Cause, which was granted. Dkt. Nos. 21; 25. After subsequent extensions of time, the Federal Respondents-Defendants filed their Response and Motion to Dismiss on October 10, 2024. Dkt. 33. On October 17, 2024, Petitioner filed his Reply. Dkt. 35. The Court heard oral argument on October 23, 2024.

As recently as October 10, 2024, the Belgian Government has taken the position that Petitioner holds no "legal status allowing him to reside within Belgian territory" and that he "does not possess the right to remain [in Belgian territory] under any current residency laws or permits." Dkt. 37.

## II. ANALYSIS

Petitioner raises four arguments in support of habeas relief: (i) an alleged violation of the United States-Belgium Extradition Treaty and Diplomatic Notes (the "Extradition Treaty") (Count 1); (ii) an alleged violation of the principle of specialty under Article 15 of the United States-Belgium Extradition Treaty (Count 2); (iii) an alleged violation of 5 U.S.C. § 706(2)(A)-(D) (Count 3); and (iv) an alleged violation of the Fifth Amendment based on his alleged unlawful detention (Count 4). Ultimately, Petitioner's arguments boil down to two main points. First, that Petitioner's removal proceedings are unlawful because they should never have begun in the first place; and, second, that there is a violation of the Extradition Treaty. In response, the Federal Respondents-Defendants challenge this Court's jurisdiction and then, separately, argue that the *habeas* counts fail to state a claim for relief. The Court will first address the jurisdictional issue and then address the remaining arguments.

### A. Jurisdiction

Three provisions of the Immigration and Nationality Act (the "INA") are potentially at issue here: 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g). Section 1252(a)(5) states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section ***shall be the sole and exclusive means for judicial review of an order of removal*** entered or issued under any provision of this chapter, except as provided in subsection (e). For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

8 U.S.C. § 1252(a)(5) (emphasis added). Section 1252(b)(9) is colloquially known as the "zipper clause" and states:

7

> Judicial review of ***all questions of law and fact, including interpretation and application of constitutional and statutory provisions***, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, ***no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings***, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g) (emphasis added).

The Federal Respondents-Defendants raise the first two statutory bases for a lack of jurisdiction and, because this matter implicates this Court's subject-matter jurisdiction, the Court *sua sponte* also considers the application of Section 1252(g).[6] Herein, the Court considers the application of each potential jurisdiction-stripping provision in turn.

            i.      Section 1252(a)(5)

Section 1252(a)(5) strips subject-matter jurisdiction from federal courts where a claim involves "judicial review of an order of removal." 8 U.S.C. § 1252(a)(5). Although there is not yet a final order of removal, the IJ has issued an order finding Petitioner removable and determining that Petitioner should be removed from the United States to Belgium, or alternatively to Tunisia. Dkt. 33-4 at 58. In Count 1, Petitioner asserts that "the United States *must* return Mr.

---

[6] As the Fourth Circuit has instructed, "questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g Inc.*, 369 F.3d 385, 390 (4th Cir. 2004).

8

Trabelsi to Belgium." Dkt. 1 ¶ 100 (emphasis added). Because Count 1 challenges the IJ's removal order outside of the removal proceedings, this Court lacks subject matter jurisdiction to consider Count 1 pursuant to Section 1252(a)(5).

Courts of appeals recognize that Section 1252(a)(5) precludes not only "direct" challenges to removal orders, but also "indirect" challenges. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (holding that "section 1252(a)(5)'s jurisdictional bar applies equally to preclude such an indirect challenge"). Specifically, courts of appeals have held that challenges to a "country of removal" fall squarely within Section 1252(a)(5)'s jurisdiction-stripping provisions. *See Tonfack v. Attorney General*, 580 F. App'x 79, 81 (3d Cir. 2014) (affirming dismissal of habeas petition for lack of jurisdiction pursuant to Section 1252(a)(5) where the petitioner argued that "Cameroon is not a proper country of removal").[7] Because Petitioner here seeks to eliminate the provision in the IJ's removal order that would permit his removal to Tunisia and seeks an order that Petitioner be returned to Belgium, Count 1 implicates the removal order and thus falls within the jurisdiction-stripping provisions of Section 1252(a)(5).

ii. Section 1252(b)(9)

Section 1252(b)(9) strips "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). At its core, Petitioner's habeas argument suggests that his detention and removal proceedings violate immigration law because: "[n]oncitizens paroled into the country for prosecution, like Mr. Trabelsi, are not applicants for admission because their presence on U.S. soil is involuntary." Dkt. 35 at 9. But this contravenes facts to which Petitioner has admitted in his

---

[7] *See also Hassan v. Feeley*, No. 21-cv-82, 2021 WL 395546, at *4 (W.D.N.Y. Feb. 4, 2021) (holding that a habeas petition seeking a declaration that petitioner "not be removed to any country except for Canada" fell within the jurisdiction stripping provisions of Section 1252(a)(5)).

9

removal proceedings and would require review of those factual admissions. Accordingly, the Court finds that Congress has stripped jurisdiction to review Counts 2, 3, and 4 of the Petition.

As set forth *supra*, the NTA filed in the removal proceedings states: "You arrived in the United States and applied for admission on or about October 2, 2013, at Manassas Regional Airport." Dkt. 33-2. During his appearances before the IJ, Petitioner "admitted to the allegations in the NTA and conceded the then-sole charge of inadmissibility." Dkt. 33-4 at 5. Thus, by Petitioner's own admissions, which are unreviewable by this Court, Petitioner *was* an applicant for admission to the United States.

Petitioner later admitted further charges of inadmissibility. Dkt. 33-4 at 7.[8] Counts 2, 3, and 4 squarely challenge these facts as determined in the removal proceedings. *See* Dkt. 1 ¶ 106 (asserting that Petitioner should have been permitted to depart voluntarily); *id.* ¶ 112 (arguing that Petitioner "cannot be treated as an applicant for admission"); *id.* ¶ 118 (asserting that Petitioner "has never sought admission to the U.S."). Whether Petitioner was an applicant for admission to the United States, such that removal proceedings were properly initiated, is a question that arises out of the removal proceedings where Petitioner has already admitted facts establishing that he applied for admission. *Casa De Maryland v. DHS*, 924 F.3d 684, 697 (4th Cir. 2019) (recognizing that Section 1252 "consolidat[es] all claims that may be brought in removal proceedings into one final petition for review of a final order in the court of appeals"); *see Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) ("In other words, a noncitizen's various challenges arising from the removal proceeding must be 'consolidated in a petition for review and considered by the courts of appeals.'"). Thus, because Counts 2, 3, and 4 all challenge whether Petitioner is properly

---

[8] There is a clear tension between Petitioner's actions in the removal proceedings – where Petitioner has admitted to being an applicant for admission and is not challenging his removability – and his actions here – where Petitioner challenges the initiation of removal proceedings *at all*.

considered an applicant for admission and whether he is properly involved in removal proceedings, those Counts implicate Section 1252(b)(9)'s jurisdiction-stripping provisions.

Petitioner seeks to avoid this conclusion by arguing that his claims focus only on his ongoing detention and not his removal and, indeed, argue that Petitioner wants to be removed (but only if he is removed to Belgium). Dkt. 35 at 1 ("Mr. Trabelsi, though, wants to leave – and simply wants to be put back in the position he was in before the United States government took custody of him."). But courts have recognized that challenges to detention that do not focus on the length of detention or the conditions of detention are foreclosed by Section 1252(b)(9) because they arise out of the removal process. *See Tazu v. Attorney General*, 975 F.3d 292, 299 (3d Cir. 2020) ("Here, by contrast, Tazu's re-detention challenge *is* directly about removal."). Indeed, here, Petitioner challenges the "decision to detain [him] in the first place," which a plurality of the Supreme Court has indicated falls within the ambit of Section 1252(b)(9)'s jurisdiction-stripping provisions. *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (Alito, J., plurality) (contrasting the requests by the respondents in that case with decisions that fall within the ambit of Section 1252(b)(9), including "the decision to detain them in the first place"). Moreover, Petitioner is detained, in part, pursuant to his admission that he was involved in a crime involving moral turpitude and the IJ's findings regarding inadmissibility, which makes detention mandatory. *See* Dkt. 33-4 at 1-2, 7, 44-45 (recounting admissions to involvement in crimes of moral turpitude and also finding Petitioner removable for having engaged in terrorist activity and for having received military training from a terrorist organization); 8 U.S.C. § 1226 (authorizing detention of noncitizens pending removal decision and mandating detention of noncitizens inadmissible under Section 1182(a)(3)(B)). Courts have recognized that, where the issue of mandatory detention is intertwined with the order of removal, the judiciary is barred from deciding the matter under Section 1252(b)(9). *See, e.g.*,

*O.D. v. Warden, Stewart Detention Ctr.*, No. 4:20-cv-222, 2021 WL 5413968, at *4 (M.D. Ga. Jan. 14, 2021) (holding "the Court cannot review the immigration court's determination that Petitioner is subject to mandatory detention").

In sum, Petitioner's challenge to his detention in Counts 2, 3, and 4 based on the contention that Petitioner was not an applicant for admission to the United States and therefore should never have been detained in the first place are not independent or separate from his removal proceedings. Because the detention claims and the removal proceedings are inextricably intertwined, Section 1252(b)(9) divests this Court of jurisdiction.

### iii. Section 1252(g)

Although not raised by the government, all four habeas Counts would appear to also implicate the jurisdiction-stripping provisions of Section 1252(g), which removes jurisdiction over any claim arising from the "decision or action by the Attorney General to *commence* proceedings . . . against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added).[9] Petitioner challenges the government's decision to commence removal proceedings at all, as each habeas count argues that the commencement of removal proceedings is itself a violation of Petitioner's rights. *See* Dkt. 1 at 17-18 (Count 1 – arguing that removal proceedings should not have commenced because Petitioner should have been returned directly to Belgium); *id.* at 18-19 (Count 2 – arguing that removal proceedings should not have commenced because Petitioner should have first been given an opportunity to voluntarily depart); *id.* at 20-21 (Count 3 – arguing that removal proceedings should not have commenced because he never sought admission to the United States); *id.* at 21-22 (Count 4 – arguing that removal proceedings should not have commenced because he

---

[9] Rather, the Government makes arguments about its "authority to *initiate* removal proceedings," which would appear to fit squarely within Section 1252(g). Dkt. 33 at 12 (emphasis added).

never sought admission to the United States). Because each of Petitioner's claims arises from the government's decision to commence removal proceedings (in violation of Petitioner's alleged right to voluntarily depart to or be returned to Belgium), this Court also lacks jurisdiction to review Petitioner's habeas claims pursuant to Section 1252(g).

\* \* \*

In sum, the Federal Respondents-Defendants correctly argue that this Court is barred from reviewing Petitioner's four habeas-based counts (Counts 1-4) and that their motion to dismiss based on a lack of subject matter jurisdiction should be granted.

### B. Merits

Even assuming *arguendo* that the Court is not barred from reviewing Petitioner's four habeas counts, the Court would still grant the Federal Respondents-Defendants motion to dismiss. A brief discussion of the merits of each claim follows.

#### i. Count 1

In Count 1, Petitioner argues that the United States has violated the United States-Belgium Extradition Treaty which Petitioner contends requires that Petitioner be returned to Belgium following his acquittal in the D.C. District Court. To begin with, in his brief, Petitioner does not separately analyze Count 1 and, instead, his only argument premised on the Extradition Treaty is an alleged violation of the principle of specialty which is set forth in Count 2 – not Count 1. Dkt. 35 at 16-20. Thus, it appears that Petitioner has abandoned his argument with respect to Count 1.

Nevertheless, assuming that Petitioner preserved his arguments with respect to Count 1, the Federal Respondents-Defendants have established that Count 1 fails. As the Federal Respondents-Defendants note, Count 1 does not cite to any language or provisions of the Extradition Treaty; rather it purports to rely almost exclusively on the 2022 and 2024 Notes. But

the 2022 and 2024 Notes are not as forceful as Petitioner contends. The Notes do not, as the Petitioner argues, demand Petitioner's return to Belgium. *Compare* Dkt. 35 at 20 (arguing "the notes still make a demand") *with* Dkt. 1-2 ("The Government of Belgium transmits this Diplomatic Note . . . in fulfillment of the order" from the Brussels Court of Appeals) *and* Dkt. 1-3 (reiterating the same, noting that "an appeal procedure against the orders is still ongoing," and "ask[ing] the Government of the United States to *initiate* negotiations with a view to a *possible* return, *provided* there are no impediments" (emphasis added)). Moreover, the Government of Belgium has explicitly stated to the United States that Petitioner has no status that would permit him to reside in Belgium, which would appear to be an impediment to Petitioner's return. Dkt. 37. Thus, the plain language of the 2022 and 2024 Notes do not demand Petitioner's return such that Petitioner can premise a habeas claim on the alleged failure to comply with such a demand.

The decision reached here is consistent with the D.C. Circuit Court of Appeal's decision with respect to Petitioner's criminal case. In its 2022 decision, the D.C. Circuit recognized that there is a conflict between the Belgian executive and judicial authorities. *Trabelsi*, 28 F.4th at 197.[10] In that case, the D.C. Circuit held that "this Court should defer to the Belgian state's Extradition Order and its explanations of its subsequent diplomatic notes, rather than to the Belgian courts' interpretation." *Id.* at 1300. Although the 2022 and 2024 Notes came after the D.C. Circuit's decision, they reflect more of the same with respect to Petitioner's arguments surrounding extradition: a difference of opinion between the judiciary and the executive. But, as discussed in

---

[10] No party addressed whether the D.C. Circuit decisions have any preclusive effect in the case at issue here. Additionally, neither party has addressed Petitioner's standing to raise the issue of the 2022 and 2024 Notes given the Belgian Government's apparent ambivalence with respect to his return as reflected in the Notes. *See United States v. Suarez*, 791 F.3d 363, 367-68 (2d Cir. 2015) ("Thus, Suarez would only have prudential standing to raise the claim that his sentence violated the terms of his extradition if the Government of Columbia first makes an official protest.").

the D.C. Circuit's opinion, it is the Belgian state to which this Court must defer, and the Belgian state has not made any demands upon the United States government. Accordingly, the Court finds that, if it was to reach the merits of Count 1, the Court would deny relief and grant the Federal Respondents-Defendants motion to dismiss.

### ii.   Count 2

In Count 2, Petitioner contends that his detention pursuant to the removal proceedings violates the doctrine of specialty under Article 15 of the Extradition Treaty. Dkt. 1 ¶ 101 ("Mr. Trabelsi's detention violates the principle of specialty under extradition law, and, pursuant to the Treaty, he must be given fifteen days to depart the United States voluntarily."). Article 15 of the Extradition Treaty provides that an individual "may not be detained, tried, or punished, except for: (a) the offense for which extradition has been granted . . . ; (b) an offense committed after the extradition of the person; or (c) an offense for which the executive authority of the Requested State consents to the person's detention, trial, or punishment," unless the extradited individual does not depart within 15 days of being free to leave. Dkt. 1-4 at 15-16.[11]

"Treaties are contracts between or among independent nations . . . designed to protect sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress." *United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988). Accordingly, "[c]ourts presume that the rights created by an international treaty belong to a state and that a private individual cannot enforce them." *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001). Here, there is no evidence that Belgium has

---

[11] With respect to the Extradition Treaty, all page numbers refer to the CM/ECF page numbers.

protested any violation of Article 15,[12] and therefore "there is no basis to conclude that [Belgium] was or had reason to be offended by [petitioner's detention by the DHS/ICE] and, hence, this [detention] does not constitute a breach of the treaty provisions." *Abbas v. DHS*, 2009 WL 2512844, at *2 (W.D. La. Aug. 17, 2009); *Ahmed v. Morton*, 1996 WL 118543, at *8 (E.D.N.Y. Mar. 6, 1996) (noting that the doctrine of specialty may only be invoked by the surrendering country, "thereby depriving the extradited individual of individual standing to raise a claim under the doctrine absent any objection by the offended country").[13] Accordingly, Petitioner lacks standing to raise any alleged violation of the doctrine of specialty with respect to Count 2.

### iii. Count 3

Count 3 is premised on Petitioner's allegation that he "cannot be treated as an applicant for admission and is not properly subject to removal proceedings." Dkt. 1 ¶ 112. Petitioner's arguments with respect to Count 3 are premised on a dispute with the Federal Respondents-Defendants regarding whether the Board of Immigration Appeals' (the "BIA") decision in *Matter*

---

[12] Although neither party has provided copies of the Brussels Court of Appeals' decisions, it is apparent from the D.C. Circuit opinions that those decisions related to an alleged violation of Article 5 of the Extradition Treaty and *not* Article 15. *See Trabelsi*, 28 F.4th at 1302 ("Trabelsi has selectively picked and chosen phrases from these documents to argue that this Court must defer to the Belgian courts' interpretation of Article 5 . . . ."); *see also id.* at 1304 n.1 and n.2 (Rao, J., concurring) (recognizing that "Article 15 was not at issue in the appeal").

[13] No Fourth Circuit case appears to address whether an individual has standing to raise the issue of a violation of the principle of specialty. *See United States v. Day*, 2011 WL 5508997, at *2 n.3 (E.D. Va. Nov. 10, 2011) (noting the absence of authority). The Fourth Circuit has, however, questioned whether an individual has such standing. *United States v. Welsh*, 316 F. App'x 222, 225 (4th Cir. 2008) (assuming "that the Vienna Convention or the principle of specialty was violated in this case and that Welsh has standing to raise such a violation" and citing *United States v. Al-Hamdi*, 356 F.3d 564, 574 n.13 (4th Cir. 2004) for the indication that there is no such individual right).

*of Badalamenti*, 19 I. & N. Dec. 623, 626 (B.I.A. 1998)[14] remains good law. But the Court need not resolve that dispute, because the allegation on which Count 3 is premised is belied by Petitioner's admissions in his removal proceedings. As discussed *supra*, the NTA alleged that Petitioner "applied for admission on or about October 2, 2013, at Manassas Regional Airport," Dkt. 33-2, and, in his appearance before the IJ, Petitioner "admitted to the allegations in the NTA and conceded the then-sole charge of inadmissibility," Dkt. 33-4 at 5.

Crediting Petitioner's concession in the immigration proceedings that he is an applicant for admission and his concession that he is removable, the law requires that he be detained. 8 U.S.C. § 1225(b)(2)(A) (providing that if "an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title"). As discussed *supra*, Petitioner's detention is also valid under Section 1226, because, as the IJ found, Petitioner was found inadmissible under various provisions of Section 1182 (and he also conceded some of those provisions). Dkt. 33-4 at 1-2, 5. Thus, Petitioner's detention is also authorized, and indeed mandated, by Section 1226. 8 U.S.C. § 1226(c)(1) (providing that the Attorney General "shall take into custody any alien who" is inadmissible under various provisions of Section 1182(a)). Accordingly, based on Petitioner's admissions in the immigration proceedings, the Attorney General had the authority to and was required to detain Petitioner during the immigration proceedings. Thus, Count 3 of the Petition also fails on the merits.

### iv.   Count 4

In Count 4, Petitioner asserts that his continued detention is a violation of the Fifth Amendment's due process protections because there is no "government interest in continuing

---

[14] That decision and its progeny generally held that a noncitizen who is paroled into the United States cannot be deemed an applicant for admission and subject to removal proceedings absent evidence that the alien affirmatively seeks admission or is otherwise subject to removal.

17

removal proceedings." Dkt. 1 ¶ 116. As discussed *supra*, Petitioner's detention is authorized under Sections 1225 and 1226, based on Petitioner's own admissions regarding his application for admission and his crimes of moral turpitude. Dkt. 33-4. Moreover, the Supreme Court has recognized "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003) (holding that mandatory detention under 8 U.S.C. § 1226(c) is facially constitutional). The Fourth Circuit also recognizes that, "during the deportation process, [the] government['s] interest includes detention." *Miranda v. Garland*, 34 F. 4th 338, 364 (4th Cir. 2022). Thus, given that Petitioner has conceded that he is an applicant for admission and is removable such that the removal proceedings are statutorily authorized, the government's interest in detaining him pending his removal has been triggered and is constitutionally valid. Accordingly, Petitioner also fails to state a claim under Count 4.

### III. CONCLUSION

In sum, this Court lacks jurisdiction to consider any of the four habeas Counts in the Petition pursuant to the jurisdiction-stripping provisions of 8 U.S.C. §§ 1252(a)(5), (b)(9), and (g) because they challenge a removal order, arise out of facts determined in the removal proceedings, or challenge the Attorney General's decision to commence removal proceedings. And, even assuming *arguendo* that the Court could reach the merits of Petitioner's four *habeas* Counts, the Court would find that Petitioner cannot prevail on his claims; primarily because, in the removal proceedings, Petitioner conceded that he applied for admission to the United States and that he is removable.

Accordingly, it is hereby **ORDERED** that the Federal Respondents-Defendants motion to dismiss the *habeas* counts (Dkt. 38) is **GRANTED**; and it is

**FURTHER ORDERED** that Counts 1-4 of the Petition (Dkt. 1) are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction.

IT IS SO ORDERED.

Alexandria, Virginia
December 2, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge